# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALPHONSE MAZZARELLA,** *on behalf of himself and similarly situated employees,* : | **CIVIL ACTION NO. 3:13-2844** |
| **Plaintiffs** : | |
| v. : | **(JUDGE MANNION)** |
| **FAST RIG SUPPORT, LLC and FIRST AMERICANS SHIPPING AND TRUCKING, INC.,** : | |
| **Defendants** : | |

# **M E M O R A N D U M**

Plaintiff is a truck driver who works for defendant trucking companies driving within Pennsylvania. He and his fellow employees transport water from Pennsylvania water sources to natural gas drilling sites located within the state. He and his coworkers are paid an hourly wage, and they regularly work for more than forty hours a week. The defendants have paid him and his fellow workers overtime only after they have worked forty-five hours in a week, not after 40 hours, as the Fair Labor Standards Act mandates. Plaintiff has thus sued defendants under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act on behalf of himself and his coworkers.

Defendants' motion to dismiss plaintiff's claims was denied on June 23, 2014. (Doc. 38). *See* [Mazzarella v. Fast Rig Support, LLC, 2014 WL 2861027 (M.D.Pa. June 23, 2014)](). Trial is now set for August 3, 2015. At the pre-trial conference on May 20, 2015, it was decided that the parties should brief two

issues: whether the water that plaintiffs haul is considered "property" subject to the Secretary of Transportation's jurisdiction; and whether the water is so integral to interstate commerce that even its intrastate transport directly affects interstate commerce. Defendants filed their brief on May 29, 2015, (Doc. 62), with exhibits, and plaintiff filed his brief on June 5, 2015, (Doc. 63).

I.      **BACKGROUND**[1]

Plaintiff Alphonse Mazzarella ("plaintiff") is a truck driver employed by defendant FAST Rig Support, LLC ("FAST"), and defendant First Americans Shipping and Trucking, Inc. ("First Americans"). Plaintiff and his fellow drivers transport water from sources within Pennsylvania to natural gas rigs also located within Pennsylvania. The drivers do not travel outside of Pennsylvania during the normal course of their jobs. Plaintiff was employed with defendants from June 2012 to October 2013.    Plaintiff was paid an hourly wage between $20-22 dollars per hour during the course of his employment with defendants. His coworkers were similarly paid hourly wages. While working for defendants, plaintiff and his coworkers routinely worked for more than 40 hours per week. As an example, the plaintiff worked for 85 hours one week in June 2012 and 75 hours another week in March 2013. Despite working more than 40 hours each week, plaintiff and his fellow employees only

---

[1] All facts are taken from plaintiffs' complaint, (Doc. 1), unless otherwise noted.

received overtime pay equal to 150% of their regular pay rate for hours worked in excess of 45 hours per week. Plaintiff contends that they are owed overtime for all hours worked in excess of 40 per week as mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, *et seq*. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Additionally, the court may exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

Plaintiff brought suit against defendants on November 21, 2013, (Doc. 1), for violations of the FLSA's overtime provision, 29 U.S.C. §207(a)(1), and for violations of the PMWA's overtime provision, 43 P.S. §331.104(c). The FLSA claim was brought as a collective action pursuant to 29 U.S.C. §216(b). The PMWA action was brought as a class action pursuant to Fed.R.Civ.P. 23. Plaintiff filed a motion for conditional class certification on March 19, 2014, (Doc. 24), but later withdrew that request as the parties stipulated that all drivers employed by defendants in Pennsylvania since May 1, 2011 were conditionally certified as a collective pursuant to 29 U.S.C. §216(b). (Doc. 34). While Plaintiff withdrew the Rule 23 class action claim, the parties agreed that drivers who opt in to the collective action join the action for both the FLSA and PMWA claims. (Id.). Further, the parties have agreed to work together to identify and notify all potential collective members of the suit and allow them the opportunity to opt in. (Doc. 34).

3

## II. DISCUSSION

In order for the defendants to escape liability by citing the Motor Carrier Act ("MCA") exemption with respect to the maximum hours and overtime provisions of the FLSA, the defendants carry a heavy burden of proof regarding two issues. First, the water being hauled by the plaintiff drivers must be considered "property" for purposes of the Motor Carrier Act. Second, the intrastate trips made by the plaintiff drivers, in which water is transported from sources in Pennsylvania to gas-drilling rigs also in Pennsylvania, must constitute a practical continuity of movement in interstate commerce.

The court finds that the water at issue is considered property for purposes of the MCA. However, there is insufficient evidence that the intrastate transport of water by plaintiff drivers constitutes a practical continuity of movement in interstate commerce. Accordingly, the defendants cannot utilize the MCA exemption and the plaintiff is entitled to make a claim for overtime under the FLSA and the PMWA.

"In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992) (*citing* Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The Fair Labor Standards Act provides that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is

employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. §207(a)(1).

Employers who violate the provisions of the FLSA are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b). "When Congress enacted the [FLSA] in 1938, it gave employees and their 'representatives' the right to bring actions to recover unpaid compensation due pursuant to the Act." Lopez v. Tri-State Drywall, Inc., 861 F.Supp.2d 533, 536 (E.D.Pa. 2012) (citation omitted). Thus, "[t]he FLSA permits employees to maintain a collective action under 29 U.S.C. §216(b) on their own behalf and on behalf of all similarly situated employees." Andrako v. U.S. Steel Corp., 788 F.Supp.2d 372, 377 (W.D.Pa. 2011). Further, a plaintiff must state a cognizable claim of his own in order to bring a collective action on behalf of his co-workers under the FLSA. Id. (citations omitted).

Therefore, employers covered by the FLSA must pay overtime compensation to employees who work for more than 40 hours a week "unless one or another of certain exemptions applies." Packard v. Pittsburgh Transp. Cp., 418 F.3d 246, 250 (3d Cir. 2005). FLSA exemptions are construed

5

narrowly against the employer. Id., at 251 (*citing* Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 183 (3d Cir. 2000)). That defendants fall within an exemption to the FLSA is an affirmative defense, and "the employer has the burden of establishing an exemption." Buckley v. Kinder, 2013 WL 941562, at *1 (D.N.J. Mar. 6, 2013) *(citing* Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010)). Moreover, employers must prove "plainly and unmistakably" that its employees are exempt. Packard, 418 F.3d, at 250. Additionally, the PMWA, like the FLSA, provides that employees shall receive overtime wages of "not less than one and a half times" their regular wage for any hours worked after 40 in a workweek. 43 P.S. §333.104(c).

"The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. §782.2. The Motor Carrier Act contains an exemption with respect to the maximum hours and overtime provisions of the FLSA. 29 U.S.C. §213(b)(1). The motor carrier exception relied on by defendants states that "[t]he provisions of section 207 of this title shall not apply with respect to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. §213(b)(1). "That grant of authority applies to transportation described in §13501 of Title 49." Veney v. John W. Clarke, Inc., 28 F.Supp.3d 435, 441

6

(D.Md. 2014) (*citing* 49 U.S.C. §31502(a)(1)). "In turn, §13501 in relevant part defines the scope of the Secretary's jurisdiction as being 'over transportation by motor carrier ... to the extent that passengers, property, or both, are transported by motor carrier between a place in a State and a place in another State ... and ... on a public highway.'" Id. "[T]he Supreme Court stated that the Motor Carrier Act exemption is triggered by the mere existence of the Secretary of Transportation's power to regulate, not the actual exercise of that power." Mayan v. Rydbom Exp., Inc., 2009 WL 3152136, *3 (E.D.Pa. Sept. 30, 2009) (*citing* Levinson v. Spector Motor Serv., 330 U.S. 649, 678, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). Further, the PMWA contains a motor carrier exemption nearly identical to that in the FLSA. *See* 43 P.S. §333.105(b)(7).

The defendants have the burden of proof regarding the two pending issues. The Motor Carrier Exemption applies if the employer is a carrier subject to the DOT's jurisdiction and if the employee is a member of a class of employees that "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [Motor Carrier Act]." *See* Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 872 (3d Cir. 2015); 29 C.F.R. §782.2(a). "Thus, the effect of the interplay between the FLSA and the MCA, as applicable to this case, is to exempt from the FLSA's mandatory overtime coverage employees of motor

private carriers transporting property in interstate commerce on public highways when the activities of the employees affect safety of operation." Veney v. John W. Clarke, Inc., 28 F.Supp.3d at 441 (citation omitted). Accordingly, the defendants carry the heavy burden of proving that the fracking water their employees hauled is "property" and that the employees' transportation of this water involved interstate travel.

The term property is not defined in the MCA. Whether water used in fracking is "property" under the Motor Carrier Act does not seem to have been decided by any court. In arguing that water is property used in interstate commerce and subject to the Secretary of Transportation's jurisdiction, the defendants cite the DOT Certificate issued to defendant First Americans in October of 2004. (Doc. 62-1). The certificate states, in relevant part, "This Certificate is evidence of the carrier's authority to engage in transportation as a common carrier of property (except household goods) by motor vehicle in interstate or foreign commerce." (Id., emphasis added). As such, defendant First Americans is a motor carrier and was subject to regulation by the DOT as of October 2004. "Evidence that a carrier has a permit or license from the Department of Transportation is sufficient to prove jurisdiction." Tomlin v. JCS Enterprises, Inc., 13 F.Supp.3d 1330, 1337 (N.D.Ga. 2014) (*quoting* Vidinliev v. Carey Intern. Inc., 581 F.Supp.2d 1281, 1285 (N.D.Ga. 2008) *(citing* 29

C.F.R. §782.1(b)). However, the plaintiff contends that there is no evidence that defendant First Americans was hauling water to fracking sites at the time this certificate was issued in 2004. Further, no DOT certificate for defendant FAST was mentioned.

The defendants contract with gas-drilling companies to deliver water from retention ponds on company-owned land to the drill sites where hydraulic fracking occurs. (Doc. 62, at 4). After its use by defendants, the water becomes contaminated and must be disposed of through an injection well. (Id.). The defendants argue that the water should be considered property because it is a key ingredient to the fracking process. (Doc. 62, at 8). Moreover, the defendants contend that the water is owned by gas companies and as such, the companies are responsible for the water and must ensure that state and federal environmental regulations are met. (Id.).

In contrast, the plaintiff argues that this fracking water is not property and thus the Motor Carrier Exception cannot be utilized by the defendants. In support of his argument, the plaintiff analogized the fracking water to non-recyclable debris which at least one court has held was not property under the Motor Carrier Act. (Doc. 63, at 7) (*citing* Alice v. GCS, Inc., 2006 WL 2644958 (N.D.Ill. Sept. 14, 2006)). In that case, the court held that the defendant trash hauling company could not assert a Motor Carrier Exception defense to a driver's claim to recover overtime pay. The driver's job included

delivering drop boxes at construction sites in Illinois, transporting the trash to an Illinois recycling center after the boxes were full of debris, and returning the empty boxes to the hauling company. Furthermore, the another court has held that materials which have no value, such as trash or garbage, are not considered property under the Motor Carrier Act. (Id.) (*citing* Charlton v. Republic Services of Florida, LP, 2010 WL 2232677 (S.D.Fla. June 2, 2010)).

The court finds that the water at issue has economic value to defendants because they are being paid to both transport it to the gas-drilling site and to haul the contaminated waste water away from drilling site. *See* Veney v. John W. Clarke, Inc., 28 F.Supp.3d at 442-43 (holding that recyclables being transported may be considered property with economic value for purpose of deciding whether the MCA exemption applies). The court in *Veney* held that "even though Defendants possess the recyclables for only a short amount of time, their transporting of them from the point of collection to the point of disposal constitutes the transportation of property on public highways." Id., at 443.

According to Black's Law Dictionary, "property" is defined as:

1. Collectively, the rights in a valued resource such as land, chattel, or an intangible. • It is common to describe property as a "bundle of rights." These rights include the right to possess and use, the right to exclude, and the right to transfer. — Also termed bundle of rights. 2. Any external thing over which the rights of possession, use, and enjoyment are exercised. . .

The court finds that here, the water is property since it is owned by gas-drilling companies who retain the rights to use and transfer the water as they choose. Further, the water transported by the defendant companies is accounted for by the gallon. (Doc. 62-3). In addition, these companies have the responsibility to dispose of the water in a specific way so as to comply with state and federal regulations. The water is not comparable to garbage as the plaintiff suggests because the water is usually not contaminated when it is initially being hauled to the drilling rigs by the employees. Moreover, unlike the trash contemplated by the court in the *Charlton* case, the water has value as it is an important component of the fracking process. Therefore, defendants have met their burden with respect to this first issue. The fracking water in this case may be considered property for purposes of the Motor Carrier Act.

For the second issue, the defendants argue that the intrastate transportation of the fracking water by truck drivers directly affects interstate commerce. "Drivers, as defined under the MCA, are among a class of workers who have been held to directly affect safety of motor vehicle operation as a matter of law." Tomlin v. JCS Enterprises, Inc., 13 F.Supp.3d at 1337 (*citing* 29 C.F.R. 782.3(b)). "[F]or the motor carrier exemption from the FLSA to apply, defendants here must establish either that the activities of the individual plaintiffs involved interstate travel of a character that was more than

[*de minimis*] or that interstate travel was a 'natural, integral and ... inseparable part' of the position plaintiffs held." Dauphin v. Chestnut Ridge Transp., Inc. 544 F.Supp. 2d 266, 275 (S.D.N.Y. 2009) (*citing* Morris v. McComb, 332 U.S. 422, 433). The DOT has jurisdiction "even if the driver has not personally driven in interstate commerce if, because of company policy and activity, the driver could reasonably be expected to do interstate driving." Resch, 785 F.3d at 873-74 (*citing* DOT Notice, 46 Fed.Reg. at 37,903) (*citing* Morris, 332 U.S. 422, 68 S.Ct. 131). "Put simply, it is 'the character of the activities rather than the proportion of either the employee's time or of his activities' that controls." Id. (*citing* Levinson, 330 U.S. at 674, 67 S.Ct. 931). Further, in determining whether the plaintiffs could have reasonably been expected to transport the water interstate, the court must look to "whether the carrier (employer) does any interstate work," "assigns drivers randomly to that driving," and maintains a "company policy and activity" of interstate driving. Resch, 785 F.3d at 874 (*citing* Morris, 332 U.S. 422, 68 S.Ct. 131).

The defendants allege that they contract with gas-drilling companies to transport fresh water from locations in Pennsylvania and occasionally New York. (Doc. 62, at 5). Additionally, the defendants contend that they occasionally contract with gas-drilling companies to transport contaminated water from drill sites in Pennsylvania to Ohio. (Id.). However, none of these allegations are supported by evidence that has been supplied to the court.

Further, the fact that the transportation of some goods is part of a larger journey that will eventually cross state lines does not necessarily mean that every leg of the journey involves interstate commerce under the Motor Carrier Act. Packard v. Pittsburgh Transportation Corp., 418 F.3d 246, 255 (3d Cir. 2005). Whether a particular portion of travel is interstate or intrastate "depends on the essential character of the movement." Packard, 418 F.3d at 25 (*citing* Baltimore & Ohio Southwestern Railroad Co. v. Settle, 260 U.S. 166, 170 (1922)).

The Third Circuit in *Packard* indicated that "cases sustaining claims of MCA exemption from the FLSA overtime requirements involve patterns of distribution" and that "[t]ypically, the carrier's activity [of transporting freight] is a clearly identifiable element of an integrated interstate distribution system." Id., at 254. Further, the test of the essential character of transport is whether the travel shows any "essential continuity of movement." Id. "[T]ransportation by motor vehicle may be interstate even where the vehicle does not cross state lines, so long as the passengers or cargo is in the process of interstate travel." United Transp. Union Local 759 v. Orange Newark Elizabeth Bus Co., 111 F.Supp.2d 514, 518 (D.N.J. 2000).

Further, "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.'" Tomlin v. JCS Enterprises, Inc., 13 F.Supp.3d at 1338 (*quoting* Walters, 575 F.3d at

13

1229). Moreover, "there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." Id. (*citing* Walters, 575 F.3d at 1229 (*quoting* Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332 (1943)). Here, the court must determine whether the particular facts of this case establish a "practical continuity of movement" between two states and whether the plaintiff drivers were engaged in interstate commerce, even though their normal routes were solely intrastate.

The plaintiff drivers who transport water from sources within Pennsylvania to natural gas-drilling rigs within Pennsylvania will fall under the Secretary of Transportation's MCA jurisdiction if their trips share a practical continuity of movement with the eventual interstate travel of the water for disposal. Defense counsel suggests that the court analogize the present instance with the *Orange Network* case wherein the court held that a passenger with a single ticket that could be used for intrastate or interstate travel is regarded as an interstate traveler. United Transp. Union Local 759 v. Orange Network Elizabeth Bus Co., 111 F.Supp.2d 514, 519. Further, the *Orange Network* court stated, "[t]he carriers, regardless of whether they operate exclusively intrastate, are an integral part of the 'practical continuity of movement' of the passengers across state lines." Id. at 520. The defendants liken the passengers that will eventually travel interstate to the water they haul from the retention ponds that will eventually travel interstate

14

to Ohio for disposal. (Doc. 62, at 12). The defendants maintain that the water does not come to rest in Pennsylvania at the drilling sites, but rather it passes through the state and ends up in Ohio in a practical continuity of movement in interstate commerce. As such, defendants argue that the plaintiff drivers are engaged in interstate commerce under the MCA exemption and are not entitled to overtime under the FLSA.

However, the interstate movement of the water is interrupted by the fracking process in that the fresh water that is delivered becomes contaminated before being transported to Ohio for disposal. More specifically, during the hydraulic fracturing process,

> Under very high pressure, a combination of water, sand and chemicals is sent deep into the earth to create cracks and fissures in the shale rock. Those fissures are held open by the sand, allowing the natural gas to flow through those cracks, into the well bore and up to the surface. Wastewater from the process returns to the surface contaminated with some of those chemicals, as well as buried salts and naturally occurring radioactive material. That wastewater needs to be treated, or buried deep in the earth using underground injection wells.

*The Pennsylvania Guide to Hydraulic Fracturing, or "Fracking,"* STATEIMPACT, NPR.org.

Moreover, the issue becomes whether the fresh water utilized in the fracking process that is mixed with chemicals and becomes wastewater before it is hauled to Ohio interrupts the continuity of transit between its

15

Pennsylvania origin and its final Ohio destination.

The court in Tomlin, 13 F.Supp.3d at 1342, stated:

"Neither continuity of interstate movement nor isolated segments of the trip can be decisive. The test is one of practicality. As long as the carrier is in process of getting goods to their final destination, the goods remain in [interstate] commerce." George R. Hall, Inc. v. Superior Trucking Co., Inc., 514 F.Supp. 581, 584 (N.D.Ga. 1981) (determining jurisdiction under the Interstate Commerce Act) (citing New York, New Haven & Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 130, 73 S.Ct. 986, 97 L.Ed. 1500 (1953), Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943), and Galbreath v. Gulf Oil Corp., 294 F.Supp. 817 (N.D.Ga. 1968), aff'd, 413 F.2d 941 (5th Cir. 1969)). "Whether the transportation is of an interstate nature can be 'determined by reference to the intended final destination' of the transportation when the ultimate destination was envisaged at the time the transportation commenced. The intent at the time of transportation commences 'fixes the character of the shipment for all the legs of the transport within the United States.'" Bilyou v. Dutchess Beer Distributors, 300 F.3d 217, 223–24 (2d Cir. 2002) (citing, inter alia, Atlantic Coast Line R. Co. v. Standard Oil Co. of Kentucky, 275 U.S. 257, 269, 48 S.Ct. 107, 72 L.Ed. 270 (1927) (determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers")).

Furthermore, a District Court located in the Third Circuit has looked at factors that indicate interstate intent in determining whether the Motor Carrier Act exemption can be satisfied in a similar case in which an employee brought a class action against his employer trucking company for overtime compensation. Barrios v. Suburban Disposal, Inc., 2013 WL 6496243 (D.N.J. Dec. 11, 2013). Among the factors, the *Barrios* court looked at whether

16

processing or substantial modification of the substance occurred at a warehouse or distribution facility. Id., at 23. The *Barrios* court decided that this factor cut against finding a practical continuity of movement in interstate commerce because there was evidence that the county extracted materials from the waste before shipping it out of state. Id., at 24. In addition, some of the waste was burned before being shipped out of state. Id. The defendants in *Barrios* also argued that this waste that eventually was transported out of state was highly regulated, similar to an argument the defendants here made. Id., at 25. However, after reviewing "all the facts and circumstances surrounding the transportation," the *Barrios* court held that the evidence did not demonstrate a practical continuity of movement in interstate commerce. Id.

Similarly, in the instant action, the court finds that the transportation of the water by the defendants for use in the fracking process is not one continuous stream of commerce. Rather, the defendants' trucking activities constitute two separate commercial transactions: the first involves the delivery of untainted water to the drilling rigs and; the second consists of picking up and delivering the tainted water to the disposal site in Ohio. The final destination of the water for the plaintiff drivers is the site of the gas-drilling rigs in Pennsylvania. Even if the water that the plaintiffs deliver is ultimately brought to Ohio, there is insufficient evidence of interstate intent to

demonstrate practical continuity of movement. Moreover, the fresh water that the plaintiffs actually transport is substantially modified in that it is chemically altered when it is used for fracking before being transported to Ohio. For instance, the water undisputedly could not be returned to its origin in the retention ponds in Pennsylvania after being used in the fracking process.

Thus, after reviewing all of the circumstances surrounding the transportation of the fracking water, there is not a practical continuity of movement between the intrastate hauling of the clean water by the plaintiff drivers and the subsequent interstate transportation by different drivers of the chemically transformed water for disposal. As such, the plaintiff drivers are not engaged in interstate commerce under the MCA exemption and are entitled to make a claim for overtime under the FLSA and the PMWA.

## III. CONCLUSION

The claims of plaintiffs under the FLSA and PMWA can proceed against defendants to trial. An appropriate order will be issued.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: June 30, 2015**